Kenneth Dewayne McARTHUR,
Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–88–986.

Court of Criminal Appeals of Oklahoma.

Oct. 26, 1993.

Degree Rape (21 O.S.Supp.1986, § 1114) (Count I), Robbery With a Dangerous Weapon (21 O.S.1981, § 801) (Count II), and Kidnapping For Purpose of Extortion (21 O.S.1981, § 745) (Count III) in Pottawatomie County District Court Case No. CRF–87–297, before the Honorable Glenn Dale Carter, District Judge. Appellant was sentenced to ninety-nine (99) years imprisonment on Count I, thirty (30) years imprisonment on Count II, and ninety-nine (99) years imprisonment on Count III. The sentences were ordered to run consecutively. We affirm in part and reverse in part.

On the evening of November 9, 1987, appellant entered a Shawnee convenience store and purchased four dollars of gasoline. Moments later, appellant reentered the store telling the clerk, R.T., he had overrun the amount purchased by thirty cents. Believing appellant wished to pay the additional thirty cents, R.T. stepped behind the counter to collect the money. Appellant followed R.T. behind the counter and said, "This is a stick up." After forcing R.T. to open the cash register, appellant took the bills from it. R.T. testified that during the robbery appellant "had a bag over his hand," and that she could not see what was inside the bag. R.T. admitted that she never saw a weapon.

After the robbery, appellant forced R.T. into his car. R.T. was forced to sit on the floor board on the passenger's side with her head facing away from appellant. R.T. testified appellant held something "very hard and very sharp" to her back as he drove the car. At one point, R.T. asked appellant to stop the car and let her out. Appellant responded, "Shut up or I will split you wide open." R.T. was driven to a secluded area and raped. R.T. later identified appellant at a police line-up.

Appellant's first proposition of error raises a question of first impression for this jurisdiction. Appellant was charged under 21 O.S.1981, § 801, which provides in relevant part, "[a]ny person or persons who, with the use of any firearms or any other dangerous weapons ... attempts to

Rodney K. Freed, Shawnee, Trial Counsel, Allen Smith, Asst. Appellate Public Defender, Norman, Appellate Counsel, for appellant.

John G. Canavan, Asst. Dist. Atty., Shawnee, Trial Counsel, Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, appellate counsel, for appellee.

### OPINION

CHAPEL, Judge.

Appellant, Kenneth Dewayne McArthur, was tried by jury and convicted of First

rob or robs any person or persons, or who robs or attempts to rob any place of business ... shall be guilty of a felony...." Appellant contends that the prosecution's evidence was insufficient to prove an essential element of the crime charged. Specifically, he alleges that R.T.'s testimony is insufficient to prove any weapon, much less a dangerous weapon, was used during the robbery.

■ It is incumbent upon the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The use of a firearm or dangerous weapon is an essential element of section 801. *See Oklahoma Uniform Jury Instructions—Criminal* (OUJI–CR) 489. Significantly, section 801 allows for the consideration of a victim's subjective belief when the weapon used is a firearm. The statute can be violated "whether the firearm is loaded or not" and forbids the use of "a blank or imitation firearm capable of raising in the mind of the one threatened with such a device a fear that it is a real firearm." However, the language of the statute does not provide for such an inquiry when the weapon used is one other than a firearm.

In the absence of proof that a dangerous weapon was used during the commission of the robbery, section 801 is inapplicable and the appropriate charge is Robbery by Force or Fear under 21 O.S.1981, §§ 791, 797. Clearly, in the instant case appellant's actions were calculated to make R.T. believe he had a weapon concealed inside the bag. Therefore, we must determine whether the belief of R.T., without more, is sufficient to prove the use of a dangerous weapon beyond a reasonable doubt. We hold it is not.

A search for case law in this jurisdiction concerning this issue has proven unsuccessful. Appellant directs our attention to *State v. Suniville*, 741 P.2d 961 (Utah 1987), which we find persuasive. In *Suniville*, the defendant was charged with aggravated robbery under a statute very similar to 21 O.S.1981, § 801. Utah's statute required the prosecution to show the defendant used a "firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon...." *Id.* at 962. *Suniville* concerned the robbery of a credit union. With his right hand concealed inside his coat pocket, the defendant approached and threatened a teller, saying, "This is a robbery, don't turn it into a homicide...." *Id.* The teller testified "the pocket was 'up over the counter like he had a gun' and that 'something was pointing at me in his pocket.'" *Id.* Neither the teller nor four witnesses who saw the defendant exit the bank could testify that the defendant was carrying a gun, although one witness testified the defendant had something in his hand but he couldn't tell what the object was. *Id.*

The *Suniville* court vacated the defendant's conviction for aggravated robbery holding the "[d]efendant's menacing gesture accompanied by verbal threats is not sufficient evidence alone to establish the use of a firearm or a facsimile of a firearm." *Id.* at 965. We find the reasoning behind the Utah court's holding persuasive and applicable to this jurisdiction. After analyzing the aggravated robbery statute, the court concluded "the issue ... is not what was intended by defendant or what impression was made on the victim, but what was used." *Id.* at 964.

The same analysis is applicable to 21 O.S.1981, § 801. Accordingly, we conclude the victim's subjective belief concerning the presence of a weapon is insufficient to bring appellant's actions within the purview of Robbery with a Dangerous Weapon. The language of the statute forbids "the use of" a dangerous weapon. Allowing the victim's subjective belief to establish this element would blur the statutory distinction between Robbery With a Dangerous Weapon and Robbery by Force or Fear. Accordingly, we find that the prosecution's evidence was insufficient to support the charge of Robbery With a Dangerous Weapon.

■ Appellant does not contend that he did not rob the victim, just that the evidence failed to show he used a dangerous weapon during the course of the robbery.

As discussed above, we agree that the evidence failed to show that appellant used a dangerous weapon. However, the evidence clearly showed that appellant robbed the victim by means of force or fear, and that appellant is guilty of the lesser-included offense of Robbery in the First Degree. 21 O.S.1981, § 797. This Court has the power under 22 O.S.Supp.1990, § 1066, to reverse, affirm, or modify appellant's judgment and sentence. Judgment in this case should be remanded to the District Court to modify the judgment from Robbery With a Dangerous Weapon to Robbery in the First Degree, and to modify appellant's sentence from thirty (30) years imprisonment to twenty (20) years imprisonment.

■■■ In his second proposition of error, appellant contends that the prosecutor improperly commented on scientific evidence during closing argument. We agree. During its case in chief, the prosecution called Ms. Long, a forensic scientist. Ms. Long conducted tests on semen stains present on the victim's clothing and compared them to blood samples taken from appellant. Ms. Long found that the stains contained a type B antigen which is consistent with appellant's blood type. Ms. Long testified that approximately ten (10) percent of the population could be the donor of the semen. Ms. Long further testified that hairs retrieved from the victim's clothing had "negroid characteristics."

This Court has previously held that evidence of the type introduced by Ms. Long is admissible. *Plunkett v. State*, 719 P.2d 834, 840 (Okl.Cr.1986); *Driskell v. State*, 659 P.2d 343, 355 (Okl.Cr.1983). However, during closing argument, the prosecutor expanded on the aforementioned evidence with the following:

> MR. CANAVAN: Let's go one step further. Half that population is going to be female. So, we already know that half of your "B" secretors are going to be female. So, if 15 percent of the population is female—and she was obviously raped by a male—we're down to half of that, 7½ percent. We've narrowed it down now to 7½ percent. So, we've ex-cluded 92½ percent of the population. Okay?
>
> That is irregardless of race. And in this country less than 25 percent of the population is black. So, take one-fourth of that 7½ percent, and you're down to about a percentage and-a-half.
>
> MR. FREED: Your Honor, I'm going to object to a conclusion drawn by counsel. The testimony by the chemist was, in fact, that—that this was irregardless of race, which means that race could not be identified.
>
> THE COURT: No, the—the objection is overruled. That's what he's arguing. He's entitled to draw his inferences.
>
> MR. CANAVAN: [R.T.] told you—I mean there's no doubt here. [R.T.] told you it was a black man that raped her.
>
> The chemist testified that the hair on the shirt was definitely Negroid in quality. So, we know that the rapist is a black person. So, the antigen activity involved with [R.T.] has to come from a black male. And, again, as I'm telling you, half the population gets you down to 7½ percent, and then about a quarter or less gets you down to less than one and-a-half percent. Now, do you see how we're narrowing this down now?
>
> \* \* \* \* \* \*
>
> Think about that. We're down to almost over 98 percent of the population is excluded....

(Tr. 162–164).

■■■ This Court tolerates, and in fact, encourages a reasonable exercise of freedom of speech and a wide range of argumentation during closing argument. The freedom of speech and the range of argumentation contemplated, however, extend only to the evidence presented at trial and to reasonable inferences drawn therefrom. *Scott v. State*, 751 P.2d 758, 760 (Okl.Cr. 1988). In the instant case, the prosecutor's argument greatly exceeded the evidence presented at trial. No evidence was presented concerning the percentage of females in the population, or the percentage of blacks in the population, which served as a basis for the prosecutor's "mathematical

formula." These percentages were supplied solely by the prosecutor and in so doing he ceased to give argument and began to give testimony. The prosecutor's comments lacked a proper foundation and constitute the type of misuse of statistical evidence this Court warned against in *Brown v. State*, 751 P.2d 1078, 1079 (Okl. Cr.1988). Although the prosecutor's comments set forth above are clearly improper, we find that the error does not require reversal in light of the positive identification of appellant made by R.T. However, in the interest of justice, we will **MODIFY** appellant's sentence for Count I from ninety-nine (99) years to fifty (50) years imprisonment.

■ In his final proposition of error, appellant contends that his sentences are excessive and should be modified. In support of this argument, appellant points to the fact that he has no prior felony convictions and that the "complainant was not physically injured aside from the rape itself." (Appellant's Brief at 12). We find these arguments unpersuasive. First, we need not address the sentence for Count II as that count has been reversed and remanded with instructions to modify Judgment and Sentence. Furthermore, the sentence for Count I has previously been modified as the result of errors identified above. We have reviewed the remaining sentences, which are within the punishment allowed by statute, in light of the facts and circumstances of this case and conclude that they do not shock the conscience of this Court. Accordingly, we deem further modification unwarranted. *See McBrain v. State*, 763 P.2d 121, 125 (Okl.Cr.1988).

For the foregoing reasons, Count I is **AFFIRMED** as **MODIFIED** from ninety-nine (99) years to fifty (50) years imprisonment. Count II is **REVERSED** and **REMANDED** to the District Court to modify the judgment and sentence to Robbery in the First Degree with the maximum sentence of twenty (20) years imprisonment imposed thereon. Count III is **AFFIRMED** as to both judgment and sentence.

JOHNSON, V.P.J., and LANE, J., concur.

LUMPKIN, P.J., concurs in part and dissents in part.

LUMPKIN, Presiding Judge, concurring in part/dissenting in part.

I concur with the Court's decision to affirm the Appellant's convictions in Count I and Count III and the modification of the sentence in Count I. However, while I agree with the Court's application of the authority set forth in 22 O.S.Supp.1990, § 1066, I find the evidence is sufficient pursuant to our prior caselaw to affirm the conviction of Robbery with a Dangerous Weapon.

The Court adopts the holding in *State v. Suniville*, 741 P.2d 961 (Utah 1987), as the analysis applicable to 21 O.S.1981, § 801. The Supreme Court of Utah determined that a "subjective" analysis could not be utilized to validate a conviction for Aggravated Robbery wherein a person "[u]ses a firearm or a facsimile of a firearm, knife or a facsimile of a knife or a deadly weapon ...", however, the Court did find the State had proved the offense of robbery [by force or fear] and reduced the conviction to robbery with a remand for resentencing. This Court possesses the same power and authority utilized by the Supreme Court of Utah to modify the judgment and remand for resentencing or modify the judgment and sentence. *See* 22 O.S.Supp.1990, §§ 929, 1066, 1067. The power to modify the judgment and sentence has always been a part of the authority granted to this Court. The authority to remand for resentencing was added to the statutory language of Section 1066 in 1990 with the enactment of Section 929.

However, a review of *Suniville* does not end the analysis of the issue presented in this case. The facts of this case show that the victim never saw a weapon because the Appellant kept a bag over his hand. However, the victim, at one time, *did feel something* "very hard and very sharp" in the bag pressed against her back. This Court has previously affirmed a conviction for the same offense even though the victim never

saw the weapon. *See Wilson v. State*, 637 P.2d 900 (Okl.Cr.1981). The Court's analysis sets forth:

> Appellant first contends that the evidence presented at trial was insufficient to support the verdict. He specifically argues that the dangerous weapon used, a six-inch bladed folding knife described in the information, was not introduced at trial. Ward testified at trial that Joseph Wilson held a knife at his throat. Although Ward did not testify that he saw the knife, he did feel it and cut his thumb on it. The information charged the use of a dangerous weapon. In *State v. Hanna*, 540 P.2d 1190 (Okl.Cr.1975), this Court ruled that violation of 21 O.S.1971, § 801, does not require the use of a dangerous weapon, per se, but that the way in which an instrument is used is the controlling factor in determining whether it is a dangerous weapon. In this case Ward testified that a sharp object was held at his throat and that Joseph Wilson threatened to cut his head off. There was competent evidence from which the jury could conclude that a dangerous weapon was used. *Karlin v. State*, 540 P.2d 1181 (Okl.Cr.1975). *Id.*, 637 P.2d at 901

It is interesting to note the similarity in the fact situation in this case and in *Wilson.* The court fails to apply *Wilson* in properly resolving the issue presented by the facts of this case. The only real distinction between the two cases is that in *Wilson* the victim's thumb was cut and here the victim felt the sharp point in her back. This is where the factual analysis differs from that presented in *Suniville.* The Court in *Suniville* was dealing with a purely "subjective" analysis because the witnesses did not have any independent evidence to support a finding that the defendant actually had a weapon in his pocket. In the case before this Court we are not dealing with a purely "subjective" analysis but an analysis which contains independent circumstances which support the finding that Appellant actually had a knife in the sack. The facts of this case contain both direct and circumstantial evidence which requires this Court to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Spuehler v. State*, 709 P.2d 202, 203–204 (Okl.Cr.1985). Since this case presents a determination based on direct and circumstantial evidence, and not just a "subjective" analysis, the judgment and sentence for Robbery with a Dangerous Weapon in Count II must be affirmed.